UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Leroy Hayes, Jr., | Case No. 16-cv-2926 (DWF/SER) |
| Plaintiff, | |
| v. | ORDER AND REPORT AND RECOMMENDATION |
| City of Saint Paul, Minnesota and JPMorgan Chase Bank, N.A.,[1] | |
| Defendants. | |

---

Margaret E. Jacot, Esq., City Attorney's Office, Saint Paul, Minnesota, for Defendant City of Saint Paul.

Jared D. Kemper, Esq., Dykema Gosset, PLLC, Minneapolis, Minnesota, for Defendant JPMorgan Chase Bank, N.A.

---

STEVEN E. RAU, United States Magistrate Judge

This matter comes before the undersigned on Defendant JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Dismiss [Doc. No. 17]; Motion to Substitute JPMorgan Chase Bank, N.A. for Chase Mortgage as the real party in interest, *see* (Minute Entry Dated Feb. 21, 2017) [Doc. No. 43] (outlining Chase's Motion to Substitute during a hearing on its Motion to Dismiss); and the City of Saint Paul, Minnesota's ("St. Paul") Motion for Summary Judgment [Doc. No. 25]. This matter was referred to the undersigned for resolution of dispositive and non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A)–(C). *See* (Order of Reference) [Doc. No. 29]. For the reasons stated below, this Court grants Chase's Motion to Substitute, and recommends that

---

[1] As described elsewhere in this Order and Report and Recommendation, Chase's Motion to Substitute is granted and JPMorgan Chase Bank, N.A. should be substituted as the real party in interest.

Chase's Motion to Dismiss be granted, St. Paul's Motion for Summary Judgment be granted, and this case be dismissed.

## I. BACKGROUND[2]

Hayes filed his Complaint on August 30, 2016, alleging St. Paul and Chase (collectively, the "Defendants") discriminated against him in violation of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601–3619, 3631, and Title VI under the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000d–2000d-7. *See* (Compl.) [Doc. No. 1 at 2].[3] In particular, Hayes asserts that St. Paul improperly evicted his family from their home over the alleged presence of mold. (*Id.* at 3). Hayes alleges Chase represented to him "that they were going to take care of their interest in the property and would get everything completed and bill [him] at cost;" but did not complete the remediation or bill Hayes. *See* (*id.*). Hayes further alleges that after inspection, no mold was found. (*Id.*).

Hayes seeks $205,300 as the replacement cost of his house, although it is unclear from the face of Hayes's Complaint when or why his home was demolished. *See* (*id.* at 3–4). Hayes also seeks $20,530 for the replacement value of his detached garage and unspecified compensatory and punitive damages for humiliation, emotional stress, and violations of the FHA. (*Id.* at 4). In support of these allegations, Hayes attached an exhibit containing multiple documents to his Complaint. *See* (Ex. A, Attached to Compl., "Ex. A to Compl.") [Doc. No. 1-1]. First is a letter from Hayes to St. Paul stating that Hayes believed the loss of his property was "due to bigotry, discrimination, and a [sic] overwhelming desire of some Caucasians thinking

---

[2] The Court details only the relevant factual background. For example, facts related to Chase's Motion for Extension of Time to Respond to Complaint [Doc. No. 8] are described in the Court's previous order directed thereto. *See* (Order Dated Jan. 31, 2017, "Jan. Order") [Doc. No. 41 at 2–3].

[3] CM/ECF pagination is used when referencing Hayes's Complaint and attached exhibits.

2

they are the superior beings." (*Id.* at 1). Next, Hayes provided an unsworn statement from his tenants outlining the reasons those tenants were told why the property was condemned. *See* (*id.* at 4). Hayes also attached as an exhibit an insurance statement giving the estimated replacement cost of the property. *See* (*id.* at 5). Last, Hayes includes an unsworn statement regarding certain home repairs that were conducted before he took possession of the home or as part of the purchase agreement to buy the home and a statement that the home was mold-free. (*Id.* at 6).

On December 9, 2016, Chase filed its Motion to Dismiss. (Mot. to Dismiss). On December 12, 2016, St. Paul filed its Motion for Summary Judgment. (Mot. for Summ. J.). On January 10, 2017, the Court received Hayes's response. (Pl.'s Resp., "Resp.") [Doc. No. 37]. A hearing on these motions occurred before the undersigned on February 21, 2017, at which time Chase additionally moved the Court to substitute JPMorgan Chase Bank, N.A. for Chase Mortgage as the real party in interest. *See* (Minute Entry Dated Feb. 21, 2017). Hayes did not attend the hearing. (*Id.*). Later, however, Hayes filed numerous letters with the Court raising various concerns and provided the Court with additional information. (Letter Dated Feb. 27, 2017) [Doc. No. 45] (alleging that he was not receiving correspondences from the Court); (Letter Dated Mar. 7, 2017) [Doc. No. 47] (inquiring about why the Court issued an Order [Doc. No. 44] that future communications must be in writing based on Hayes's behavior on the phone with members of Judge Rau's chambers); (Letter Dated Mar. 21, 2017) [Doc. No. 48] (outlining Hayes's schedule to avoid potential conflicts in the scheduling of future hearings before the Court).

With respect to Chase's Motion to Dismiss, Chase argues that Hayes's Complaint fails to plead sufficient facts to demonstrate that he is entitled to relief. (Mem. of Law in Supp. of Chase's Mot. to Dismiss, "Mem. in Supp. of Mot. to Dismiss") [Doc. No. 19 at 3]. In particular,

3

Chase argues that Hayes's allegation that "'Chase Mortgage informed Plaintiff that they were going to take care of their interest in the property and would get everything completed and bill Plaintiff at cost. This was supposed to be carried out by John Dockry, Attorney for JP Morgan, but was never done'" does not establish a breach of contract claim. (*Id.* at 4–5) (quoting Compl. at 3). Similarly, Chase argues that this same allegation—and the only allegation levied against Chase in Hayes's Complaint—is insufficient to establish a violation under the FHA. (*Id.* at 6–8).

With respect to St. Paul's Motion for Summary Judgment, St. Paul argues that the record clearly demonstrates that St. Paul acted with legitimate non-discriminatory intent. To support their argument, St. Paul provides additional exhibits that detail the condition of Hayes's home and the process by which his home was first declared a "vacant building" and later a "nuisance building" because Hayes was unable to obtain a Certificate of Occupancy (based on the condition of the home and Hayes's failure to bring residence into compliance as required under local ordinance). *See generally* (Def. City of St. Paul's Mem. in Supp. of Mot. for Summ. J., "Mem. in Supp. of Summ. J.") [Doc. No. 33 at 2–6] (discussing exhibits attached to the Affidavit of Steven Magner ("Magner Affidavit") [Doc. No. 34] as part of its arguments); *see also* (Magner Aff. ¶¶ 3–17); (Exs. A–Q, Attached to Magner Aff.) [Doc. No. 34-1].[4]

Specifically, St. Paul argues that it followed the required process under local ordinances demonstrating that Hayes's property was not condemned with discriminatory intent. (Mem. in Supp. of Summ. J. at 4, 5–6); *see also* (Ex. A at 45–46, 63, 67–69, 71–72, 81–86, 90–93, 98–103) (relevant portions of the St. Paul, Minnesota, Legislative Code §§ 34.21, 40.01, 40.04, 40.06, 43.02-.03, 45.02, 45.10-.11). St. Paul alleges that it revoked Hayes's Certificate of

---

[4]   When citing to exhibits A-Q attached to the Magner Affidavit, they are referenced as "Ex. ___"; for clarity, references to Hayes's exhibit A is referenced as "Ex. A to Compl.". Also, when referencing exhibits, CM/ECF pagination is used.

4

Occupancy based on identified code violations, "and, in December 2011, he was ordered to register the house as a 'vacant building.'" (Mem. in Supp. of Summ. J. at 5); *see also* (Magner Aff. ¶ 11); (Exs. C-E at 109–15, 117–19, 121–22).

After being categorized as a "vacant building," St. Paul alleges that "Hayes's property [was] the subject of numerous interventions" to maintain the premises including being the subject of "twenty Summary Abatement Notices and fifteen work orders." (Mem. in Supp. of Summ. J. at 5); *see also* (Magner Aff. ¶ 13); (Exs. G–H at 134–42, 144–81). St. Paul also alleges that as a result of Hayes's failure to maintain his property, it conducted a "deficiency inspection." (Mem. in Supp. of Summ. J. at 5); (Magner Aff. ¶ 14); (Ex. I at 183–84) (notice of inspection). Next, St. Paul states that based on the code deficiencies that were identified, an abatement order was sent to Hayes. (Mem. in Supp. of Summ. J. at 5); (Magner Aff. ¶ 14); (Ex. I at 185–90) (abatement order). St. Paul further alleges that Hayes failed to address the issues and bring the building to code by the deadline set forth in the abatement order. (Mem. in Supp. of Summ. J. at 5); (Magner Aff. ¶ 14). Because Hayes failed to make the necessary repairs, hearings before a legislative hearing officer ("LHO") and the City Council were scheduled and noticed. (Mem. in Supp. of Summ. J. at 5); (Magner Aff. ¶ 14); (Ex. J at 193–98).

At the July 28, 2015 hearing before the LHO, Hayes requested an extension "to bring his property up to code." (Mem. in. Supp. of Summ. J. at 5); *see also* (Magner Aff. ¶ 15); (Ex. K at 201–05) (hearing minutes before the LHO). Noting Hayes's consistent failures to remedy identified deficiencies and raising concerns about the amount of city resources required to maintain Hayes's property, the LHO recommended to the City Council that any extension be conditioned on Hayes positing a $5,000 performance deposit. (Mem. in Supp. of Summ. J. at 5–6); (Magner Aff. ¶ 15); (Ex. K at 201–05); (Ex. L at 207–08) (letter outlining the

5

recommendation of the LHO). Specifically, if Hayes deposited the required amount on or before August 12, 2015, St. Paul "would post-pone the August 19, 2015 [City Council Hearing] to September 2, 2015, and Hayes would be required to complete preliminary steps towards rehabilitating the house by August 26, 2015." (Mem. in Supp. of Summ. J. at 6); *see also* (Ex. L at 207–08).

Hayes allegedly did not provide the required performance deposit. (Mem. in Supp. of Summ. J. at 6). And, on August 19, 2015, the City Council held its scheduled public hearing to "consider[] a [resolution] to declare the house to be a nuisance property and to order Hayes to raze the house within fifteen days." (Mem. in Supp. of Summ. J. at 6); *see also* (Magner Aff. ¶ 16) (Ex. M at 210–11) (memorializing the City Council's order). Hayes was not in attendance at this hearing. (Mem. in Supp. of Summ. J. at 6); (Magner Aff. ¶ 16). "[T]he City Council adopted the resolution with little discussion." (Mem. in Supp. of Summ. J. at 6). Furthermore, "[n]o mention of race [was] made at the hearing." (Magner Aff. ¶ 16). Because Hayes did not raze the property as ordered, St. Paul "hired a contractor to complete the job." (Mem. in Supp. of Summ. J. at 6); *see also* (Magner Aff. ¶ 16) (Ex. O at 215–16) (noticed to proceed with demoltion).

In his Response, Hayes asserts five arguments as to why his case should proceed. First, Hayes argues that Chase's answer is untimely. (Resp. at 1). Second, Hayes argues that John P. Dockry ("Dockry"), an attorney representing Chase ,"was directed to do whatever necessary to protect [Chase's] Interest and the cost would be billed to the Plaintiff" and that the was a question as to what "change [the] bank's mind in this matter." (*Id.*). Third, Hayes alleges that Dockry said he would "get back with Plaintiff right away," but never returned any of Hayes's phone calls. (*Id.* at 1–2). Fourth, Hayes alleges that there was no reason for St. Paul to condemn the property because "the house was in great shape inside and out." (*Id.* at 2). Fifth, Hayes

6

alleges that the discrimination set forth in his Complaint demonstrates a violation under the FHA. (*Id.*).

## II.     DISCUSSION

The Court first addresses Chase's Motion to Substitute. Because Hayes does not object, and Chase's motion comports with interests of efficiency espoused in Rule 1 of the Federal Rules of Civil Procedure, the Court grants Chase's Motion to Substitute. Next, this Court finds that Hayes has failed to meet the pleading standards set forth under Rule 8(a); the Court recommends that Chase's Motion to Dismiss be granted without prejudice. Finally, because the record evidence clearly demonstrates that Hayes's property loss was not the result of discriminatory intent, Hayes's FHA claim against St. Paul fails, and this Court recommends that St. Paul's Motion for Summary Judgment be granted.

### A.     Motion to Substitute

Typically, it is the plaintiff's responsibility to cure a misnamed defendant. *See Hughes v. Auto-Owners Ins. Co.*, No. 4:11–CV–979, 2011 WL 2601519, at *3–4 (E.D. Mo. June 30, 2011) (denying defendant's motion to substitute because "[w]here a complaint names the wrong party as a defendant, it is appropriate for the plaintiff to seek leave to amend her complaint under Rule 15(a) to name the correct party defendant"); *see also* 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1498.2 (3d ed. 2017) (stating that when the proper party is served but misnamed in the complaint, changing the misnamed party "should be allowed as a matter of course as long as it satisfies the transaction standard in Rule 15(c)(1)(B)"). Nevertheless, Rule 1 of the Federal Rules of Civil Procedure states that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

An amended complaint renders the original complaint inoperative. *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect."). Furthermore, in most instances, the act of moving to amend the complaint renders a motion to dismiss directed to the original complaint moot. *See Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) (holding "Pure Country's motion to amend the complaint rendered moot Sigma Chi's motion to dismiss the original complaint"). Based on the information before the Court—as will be discussed below in relation to Chase's Motion to Dismiss and St. Paul's Motion for Summary Judgment—the factual circumstances that give rise to Hayes's allegations cannot support a claim for relief. Thus, to require that Hayes first file an amended complaint under Rule 15 for the limited purpose of changing "Chase Mortgage" to "JPMorgan Chase Bank, N.A." and potentially mooting Chase's Motion to Dismiss would frustrate Rule 1 and unquestionably elevate form over substance.

There is nothing to suggest that "Chase Mortgage" is the real party in interest. Instead, Chase asserted in the hearing before the undersigned that "JPMorgan Chase Bank, N.A." is the real party in interest. *See* (Minute Entry Dated Feb. 21, 2017). Because Hayes has not opposed Chase's Motion to Substitute, the Court grants this motion and directs the Clerk's Office to update the docket accordingly.

### B.  Motion to Dismiss

#### 1.  Legal Standard

To satisfy the pleading standards, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To comply with this requirement, a claimant need not set out in

detail the facts upon which he bases his claims, but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 994 (8th Cir. 2002) (internal quotation marks omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[B]are assertion[s] . . . will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Thus, the pleaded factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. While the Court must construe Hayes's pleadings liberally, his pro se status does not excuse him from complying with the Federal Rules of Civil Procedure. *See, e.g., Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996).

### 2. Analysis

As a threshold matter, the Court finds that Hayes's claims fail to satisfy the pleading standards under Rule 8(a)(2). Thus, the Court need not consider the mortgage agreement or other documents attached to the Declaration of Jared D. Kemper ("Kemper Declaration") [Doc. No. 20] as part of Chase's Motion to Dismiss. *See* (Exs. 1–3, Attached to Kemper Decl.) [Doc. Nos. 20-1 to 20-3]. Nevertheless, even if this Court had considered these documents as part of Chase's Motion to Dismiss, the Court would not need to convert the Motion to Dismiss to a motion for summary judgment. The mortgage agreement is necessarily embraced by the pleadings because it is a contract on which Hayes's claims rest. *See Dunnigan v. Fed. Home Loan Mortg. Co.*, 184 F. Supp. 3d 726, 734 (D. Minn. 2016) (Nelson, J.) (holding that "the contract upon which a claim rests is necessarily embraced by the pleadings and may be considered." (citing *Gorog v. Best Buy*

*Co.*, 760 F.3d 787, 791 (8th Cir. 2014))). Likewise, all of the other documents are matters of public record and are not considered matters outside the pleadings. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also* (Kemper Decl. ¶¶ 3–4) (stating that exhibits 2 and 3 were obtained from www.stpaul.gov/dsi (a city-run website) for the purposes of making documents "available for City Council and/or legislative hearing matters"). Next, the Court will address whether Chase's Motion to Dismiss should be granted.

As a general matter, "dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. "*Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)). Construing Hayes's complaint liberally, Hayes has articulated two theories of recovery: (1) Chase is liable to Hayes for damages because Chase failed to uphold its obligations under the mortgage agreement; and (2) Chase is liable to Hayes because Chase entered into a modified mortgage agreement on the basis of the oral representations made by Chase's representatives and breached those agreements. *See* (Compl. at 1). Because the Court finds that Hayes's Complaint provides no factual basis to establish Chase's liability under either theory, the Court recommends granting Chase's Motion to Dismiss.

To the extent that Hayes alleges that his mortgage agreement with Chase gives rise to liability for Chase's failure to "take care of their interest in the property . . . get everything completed[,] and bill Plaintiff at cost," Hayes has not satisfied the pleading standards under Rule 8(a) because his allegations do not rise above bare assertions. In particular, Hayes provides no particularized facts regarding which portions of the mortgage Chase's conduct allegedly violates. *See* (Compl. at 1). Furthermore, Hayes does not state when or why his building was destroyed—

let alone provide particular facts that demonstrate that Chase was responsible for its destruction. *See* (*id.* at 3–4). Likewise, Hayes's Response is not illuminating. *See* (Resp. at 1) (alleging that Chase changed its mind on the matter based on a letter he received from them); (*id.* at 1–2) (stating that that an attorney representing Chase never called him back). As a result, Hayes has not pleaded sufficient facts as required under Rule 8(a) for this theory of relief.

To the extent that Hayes alleges that the mortgage was modified on the basis of an oral agreement that was reached between Hayes and Chase, those allegations fail to allege sufficient facts that state a cognizable claim under Minnesota law. In particular, under Minnesota law, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn. Stat. § 513.33, subdiv 2. Courts in this district have held that loan modification agreements fall within the meaning of section 513.33. *See, e.g.*, *Sovis v. Bank of N.Y. Mellon*, No. 11-cv-2253 (DWF/LIB), 2012 WL 733758, at *3 (D. Minn. Mar. 6, 2012) (Frank, J.) (finding that a loan modification "must be in writing and signed by the creditor and the debtor"); *Tharaldson v. Ocwen Loan Servicing, LLC*, 840 F. Supp. 2d 1156, 1162–63 (D. Minn. 2011) (Frank, J.) (stating that "[a] loan modification constitutes a credit agreement," and barring plaintiffs' claim under Minn. Stat. § 513.33 when plaintiffs sought "to enforce an alleged oral loan modification"); *Myrlie v. Countrywide Bank*, 775 F. Supp. 2d 1100, 1109 (D. Minn. 2011) (Ericksen, J., adopting report and recommendation of Boylan, C. Mag. J.) ("The parties' mortgage agreement constitutes a credit agreement as defined by Minn. Stat. § 513.33, subd. 1. Likewise, a loan modification agreement would constitute a credit agreement and maintaining an action based upon a loan modification agreement is barred by Minn. Stat. § 513.33, subd.

3(a)(3), unless the loan modification agreement is in writing, expresses consideration, and sets forth relevant terms and conditions, and is signed.").

Here, Hayes does not allege—and there is nothing to suggest—that he entered into a written agreement with Chase modifying the terms of his mortgage. Specifically, there are no allegations that Hayes and Chase entered into a written agreement requiring Chase to "take care of their interest in the property and . . . get everything completed and bill Plaintiff at cost." *See* (Compl. at 1). As a result, Hayes has not pleaded sufficient facts that would establish a colorable action in light of the plain language of Minnesota Statutes section 513.33, subdivision 2 for this theory of recovery.

Likewise, Hayes's sole allegation against Chase—that Chase would "take care of their interest in the property and would get everything completed and bill Plaintiff at cost"— cannot reasonably be construed to raise an FHA claim. "The [FHA] prohibits property owners and municipalities from blocking or impeding the provision of housing on the basis of race, color, religion, sex, familial status, or national origin." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010) (citing 42 U.S.C. § 3604(a)–(b)). Aside from the question of whether the FHA even applies to Chase in this instance, there is nothing to suggest—based on Hayes's allegations—that Chase impeded Hayes on the basis of race, color, or his membership in any other protected class.[5] Furthermore, Hayes's Complaint fails to allege—let alone support—a showing of

---

[5] Typically, a bank may run afoul of the FHA when it is demonstrated that the bank failed to issue a mortgage based on discriminatory lending practices. *See Rowe v. Union Planters Bank of Se. Mo.*, 289 F.3d 533, 535 (8th Cir. 2002) ("In order to establish a prima facie FHA . . . claim, [plaintiff] must demonstrate that (1) she was a member of a protected class, (2) she applied for and was qualified for a loan with the Bank, (3) the loan was rejected despite her qualifications, and (4) the Bank continued to approve loans for applicants with similar qualifications."). Here, Chase issued the mortgage. *See* (Compl. at 1); (Kemper Decl. ¶ 2). More broadly, there is nothing to suggest that any interactions between Hayes and Chase can give rise to a prima facie case for an FHA violation against Chase on the basis of Hayes's allegations.

disparate treatment, disparate impact, or any other harm cognizable under the FHA. *Cf. Gallagher*, 619 F.3d at 831–39 (discussing various claims that can arise under the FHA). Importantly, there is nothing to suggest that Chase's conduct as alleged was driven by discriminatory intent or animus. For example, Hayes does not allege facts that would suggest that he was treated differently on the basis of his race or that Chase made statements that revealed a race-based animosity. This is fatal to Hayes's FHA allegations against Chase. *Accord Folger v. City of Minneapolis*, 43 F. Supp. 3d 922, 933–34 (D. Minn. 2014) (Nelson, J.) (determining FHA claim in favor of the defendant on a motion for judgment on the pleadings in part because the complaint included nothing beyond conclusory allegations of discriminatory intent); *Mitchell v. Walters*, No. 10–1061, 2010 WL 3614210, at *6 (D.N.J. Sept. 8, 2010) (dismissing FHA claims that were "bereft of any facts which directly charge or even permit the reasonable inference that Defendants' challenged actions were motivated by either racial animus or . . . intent"); *see also Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2537 (2015) (stating that "in any FHA claim, proof of discriminatory motive is critical" in the context of discussing FHA claims generally (internal quotation marks and alteration omitted)). Because Hayes provides no factual basis to show discriminatory motive, he has failed to state a claim for which relief can be granted.

Hayes's Response also does nothing to address the issues identified above. Hayes's first argument that Chase's Motion to Dismiss is untimely is not properly before the Court and was previously adjudicated. *See generally* (Jan. Order) (granting Chase's Motion for Extension of Time to Respond to Complaint). Hayes objected to the January Order, but the January Order was affirmed by the Honorable Judge Donovan W. Frank. *See* (Letter Dated Mar. 6, 2017) [Doc. No.

42] (Hayes's self-styled objection); (Order Dated Mar. 29, 2017) [Doc. No. 49] (overruling Hayes's objection and affirming the January Order).

Hayes next argues that Dockry, as an attorney representing Chase, "was directed to do whatever necessary to protect [Chase's] Interest and the cost would be billed to the Plaintiff" and questions why Chase "changed [its] mind in this matter." (Resp. at 1). This argument is a bare assertion without factual support. Likewise, Hayes's argument that Dockry said he would "get back with Plaintiff right away," but never returned any of Hayes's phone calls is equally without merit. (*Id.* at 2). Aside from the fact that Hayes's argument is another unsupported statement, even if true, not returning a phone call is insufficient to establish liability under the claims that Hayes has alleged against Chase. Finally, Hayes's argument that the discrimination set forth in his Complaint demonstrates an FHA violation fails for the reasons set forth above. Namely, that Hayes's allegation that Chase would "take care of their interest in the property and would get everything completed and bill Plaintiff at cost," cannot reasonably be construed to raise an FHA claim.

In sum, Hayes has not stated a claim for which relief can be granted with respect to Chase and this Court recommends that Chase's Motion to Dismiss be granted.

### C. Motion for Summary Judgment

#### 1. Legal Standard

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making a summary judgment determination, this Court must view the facts in the light most favorable to the nonmoving party insofar as "there is a genuine dispute as to those facts." *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

**2.     Analysis**

Construing Hayes's Complaint liberally, Hayes alleges disparate treatment at the hands of city officials. *See generally* (Compl. at 3–4). For example, Hayes alleges that the only reason St. Paul evicted his tenants and destroyed his building was due to housing discrimination. (Compl. at 3, ¶ 3). Viewing the facts in the light most favorable to Hayes, however, there is nothing to substantiate this allegation. In other words, there is nothing to suggest a genuine dispute regarding whether St. Paul's decisions to evict his tenants and destroy Hayes's home was racially motivated—other than conclusory allegations.

"Summary judgment is warranted if the plaintiff cannot produce either (a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent under the *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 802–04 (1973)] burden-shifting framework." *Gallagher*, 619 F.3d at 831. Hayes has failed to produce any evidence—direct or indirect—to establish discriminatory intent. This alone is a sufficient basis for this Court to recommend that St. Paul's Motion for Summary Judgment be granted. Nevertheless, a review of the record evidence underscores the absence of any discriminatory intent.

First, it is clear that St. Paul revoked Hayes's Certificate of Occupancy based on identified code violations. *See* (Magner Aff. ¶ 11); (Exs. C–E at 109–15, 117–19, 121–22). The end result of this revocation was that Hayes "was ordered to register the house as a 'vacant building.'" (Mem. in Supp. of Summ. J. at 5); *see also* (Magner Aff. ¶ 11); (Exs. C–E at 109–15, 117–19, 121–22). Hayes as offered no evidence to the contrary.

After the revocation of the Certificate of Occupancy, "Hayes's property [was] the subject of numerous interventions" to maintain the premises resulting in St. Paul issuing Hayes "twenty Summary Abatement Notices and fifteen work orders." (Mem. in Supp. of Summ. J. at 5); *see*

*also* (Magner Aff. ¶ 13); (Exs. G–H at 134–42, 144–81). Because Hayes never addressed the various violations articulated in the notes and work orders, St. Paul conducted a "deficiency inspection." (Mem. in Supp. of Summ. J. at 5); *see also* (Magner Aff. ¶ 14); (Ex. I at 183–84) (notice of inspection). Based on the deficiencies that were identified, an abatement order was sent to Hayes. *See* (Magner Aff. ¶ 14); (Ex. I at 185–90) (abatement order). Hayes failed to address the issues and bring the building to code by the deadline set forth in the abatement order. *See* (Magner Aff. ¶ 14). Because Hayes failed to make the necessary repairs by the prescribed deadline, hearings before an LHO and the City Council were scheduled and noticed. *See* (*id.*); (Ex. J at 193–98).

At the July 28, 2015 hearing before the LHO, Hayes requested an extension to rehabilitate his property. *See* (Magner Aff. ¶ 15); (Ex. K at 205). Noting Hayes's consistent failures to remedy identified deficiencies and raising concerns about the amount of city resources required to maintain Hayes's property, the LHO recommended to the City Council that any extension be conditioned on Hayes posting a $5,000 performance deposit. (Magner Aff. ¶ 15); (Ex. K at 205); (Ex. L at 207–08) (letter outlining the recommendation of the LHO). At no time did the LHO indicate that race factored into this decision. (Magner Aff. ¶ 15); (Ex. K at 201–05) (hearing minutes before the LHO). Specifically, if Hayes deposited the required amount on or before August 12, 2015, St. Paul "would post-pone the August 19, 2015 [City Council hearing] to September 2, 2015, and Hayes would be required to complete preliminary steps towards rehabilitating the house by August 26, 2015." (Mem. in Supp. of Summ. J. at 6); *see also* (Magner Aff. ¶ 15); (Ex. L at 207–08).

Hayes did not provide the required performance deposit. (Mem. in Supp. of Summ. J. at 6). Consequently, on August 19, 2015, the City Council held its scheduled public hearing to

16

"consider[] a [resolution] to declare the house to be a nuisance property and to order Hayes to raze the house within fifteen days." (Mem. in Supp. of Summ. J. at 6); *see also* (Magner Aff. ¶ 16) (Ex. M at 210–11). Hayes was not in attendance at this hearing. (Mem. in Supp. of Summ. J. at 6); (Magner Aff. ¶ 16). "[T]he City Council adopted the resolution with little discussion." (Mem. in Supp. of Summ. J. at 6). The hearing made no mention of race nor is there any indication that race played a part of the decision. (Magner Aff. ¶ 16). Because Hayes did not raze the property as ordered, St. Paul "hired a contractor to complete the job." (Mem. in Supp. of Summ. J. at 6); *see also* (Magner Aff. ¶ 16) (Ex. O at 215–16).

Nothing in the above factual recitation would suggest St. Paul acted with discriminatory intent. Stated differently, nothing in the record before the Court reasonably demonstrates that Hayes was treated differently on the basis of his race or because of a general race-based animosity. In short, there is an abundance of evidence demonstrating the only reason Hayes's property was condemned and his building demolished was based on his failure to act and to maintain it as required under the relevant city ordinances.

Hayes's additional arguments are not compelling. For example, Hayes alleges that the house contained no mold and it was up to code. *See* (Compl. at 3); (Resp. at 2). Regarding Hayes's mold allegations, even if true, this fact is ineffective to overcome the evidence that shows that mold was not the only factor in St. Paul's decisions. *See, e.g.*, (Exs. G-H at 134–42, 144–81) (summary of abatement orders including orders to address security issues, and the removal of snow and ice, garbage, tall grass, weeds, and other plant growth); (Ex. K at 201) (testimony before the LHO stating that the fifteen work orders were issued related to the presence of garbage/rubbish, tall grass/weeds, snow/ice, and the home being improperly secured). Hayes's bare allegations and self-serving exhibits cannot establish a genuine issue of

17

material fact. *See Reed v. City of St. Charles*, 561 F.3d 788, 790–91 (8th Cir. 2009) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." (internal quotation marks omitted)); *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."). In some instances, Hayes's exhibit even supports St. Paul's position that the property was condemned on the basis of code violations and not on the basis of discriminatory intent. *See* (Ex. A to Compl. at 4) (stating that Hayes's tenants were asked to vacate the premises due to needed repairs on various aspects of the home including the roof, pipes, steps, and rotting wood in the bathroom).

Even if Hayes had provided more, it likely would be insufficient to create a genuine issue of material fact because his allegations that his property was up to code are directly at odds with the record evidence that demonstrates the myriad code violations present and Hayes's delinquency in addressing them. Stated differently, no reasonable jury could find in Hayes's favor on the basis of the record before the Court. *See White v. Farrier*, 849 F.2d 322, 325 (8th Cir. 1988) (stating that "a dispute about a material fact is genuine if a reasonable jury could return a verdict in favor of either party").

As such, Hayes's submissions before the Court cannot demonstrate violations under the FHA. In other words, viewing the record in a light most favorable to Hayes, the Court finds that there are no genuine issues of material fact and St. Paul is entitled to judgment as a matter of law. The Court therefore recommends that St. Paul's Motion for Summary Judgment be granted.

**III.   CONCLUSION**

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that JPMorgan Chase Bank, N.A.'s Motion to Substitute made before the Court during the February 21, 2017 hearing is **GRANTED**. The Clerk's Office is instructed to substitute "JPMorgan Chase Bank, N.A." for "Chase Mortgage" as one of the named defendants and update the docket accordingly.

## IV.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMDEND** that:

1. JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Dismiss [Doc. No. 17] be **GRANTED**;

2. City of Saint Paul, Minnesota's ("St. Paul") Motion for Summary Judgment [Doc. No. 25] be **GRANTED**;

3. Claims against Chase be dismissed **without PREJUDICE**;

4. Claims against St. Paul be dismissed **with PREJUDICE**; and

5. This case be **DISMISSED**.

Dated: May 18, 2017

*s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.